921 So.2d 189 (2005)
Daniel ARCENEAUX, Louis Daverede, Jr., Vives Lemmon, and Jules Menesses
v.
AMSTAR CORPORATION, Amstar Sugar Corporation, Tate & Lyle North American Sugars, Inc., and Domino Sugar Company.
No. 2005-CA-0177.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 2005.
*190 John R. Walker, Allen & Gooch, Metairie, Louisiana, for Appellant, Continental Casualty Company.
Lee M. Epstein, Fried & Epstein, LLP, Philadelphia, Pennsylvania, and Daniel L. Dysart, Dysart & Tabary, L.L.P., Metairie, Louisiana, for Tate & Lyle North American Sugars, Inc.
(Court composed of Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
JAMES F. McKAY III, Judge.
In February of 1999, a number of employees of Tate & Lyle North American Sugars, Inc. (Tate & Lyle) commenced an action against their employer alleging that they were occupationally exposed to unreasonably loud noise in the course of their employment at Tate & Lyle's facility in Arabi, Louisiana at various times between 1947 and 1994.[1] Thereafter, Tate & Lyle instructed its insurance broker to forward notice of the lawsuit to both its general liability and its employer's liability insurers. On March 5, 1999, notice of the lawsuit was sent to Continental Casualty Company (CNA). In May of 1999, CNA retained the law firm of Galloway, Johnson, Burr & Smith to defend the interests of Tate & Lyle.
From March of 1999 until early 2003, Galloway, Johnson, Burr & Smith provided a defense for Tate & Lyle on behalf of CNA. During this period of time, CNA was aware that the plaintiffs were Tate & Lyle employees and that the plaintiffs were alleging injurious exposure to noise during periods both before and after the inception and expiration of the CNA policies. In February of 2003, Tate & Lyle and CNA agreed that the continued defense of Tate & Lyle would be handled by the law firm of Rabalais, Unland & Lorio.
On May 5, 2003, the first flight of plaintiffs in this case proceeded to trial. Trial was suspended on May 11, 2003 to allow for settlement negotiations and Tate & Lyle eventually settled with the first flight plaintiffs. However, on June 6, 2003, CNA disclaimed coverage for the claims pending against Tate & Lyle on the basis of the "Employer Liability Exclusion" and the "Workmen's Compensation Exclusion" contained in its policies. CNA did not thereafter participate in Tate & Lyle's defense. Tate & Lyle responded by filing a third-party demand against CNA claiming that it owed a duty to defend and provide indemnification. In September of 2004, Tate & Lyle moved for partial summary judgment on its third party demand, arguing that CNA had waived its right to deny coverage. After a hearing on the motion, the trial court granted a partial summary judgment in favor of Tate & Lyle finding that by "participating in the defense of the cause, propounding and answering discovery and participating in trial management decisions for a period of four (4) years, *191 without securing a non-waiver agreement with the insured or providing the insured with a coverage reservation notice" CNA had waived its right to deny coverage. It is this partial summary judgment that CNA now appeals.
On appeal, CNA raises the following assignments of error: 1) the trial court erred in failing to apply New York law to the issue of whether Continental waived its policy exclusion defenses; 2) the trial court erred in finding that, under Louisiana law, Continental waived its policy exclusion defenses; and 3) the trial court erred in granting Tate & Lyle's motion for partial summary judgment in the face of numerous contested material issues of fact.
Under Louisiana's approach to choice of law, the first inquiry is whether there is a true or false conflict of interest. Jagers v. Royal Indemnity Co., 276 So.2d 309, 311 (La.1973). A false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state involved has no interest in the application of its law in the case. Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327 (La.App. 5 Cir.1984). In the instant case, the issue is whether CNA waived its policy exclusion defenses by defending the interests of Tate & Lyle in this matter for over four years without reserving its right to deny coverage. Louisiana is the only state that has an interest in applying its law of waiver to this dispute. New York has no interest in the regulation of Louisiana attorneys who are retained by insurers to represent insureds in cases pending in Louisiana courts. As such, this is a false conflict. In any event, the application of Louisiana law is still mandated pursuant to Louisiana's choice of law interest analysis. Louisiana's conflict of laws provisions are set forth in Civil Code Articles 3515 and 3537.
Article 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Article 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other.
In the instant case, the only contact to New York is the fact that the CNA policies *192 were delivered in that state to a corporate predecessor of Tate & Lyle some twenty-seven to forty-two years ago. Louisiana, on the other hand, has numerous contacts: Tate & Lyle was a long-term resident and employer in Louisiana; the alleged injuries all occurred in Louisiana; the litigation commenced in Louisiana and remains pending in Louisiana state courts; the plaintiffs are alleged to be residents of Louisiana; CNA retained Louisiana attorneys to defend Tate & Lyle; all of the conduct relating to CNA's defense of Tate & Lyle also occurred in Louisiana. Clearly, Louisiana is the state whose policies would be most seriously impaired if its laws were not applied in the instant matter.
Under Louisiana law, CNA waived its policy exclusion defense. When an insurer, with knowledge of facts indicating non-coverage under the insurance policy, assumes or continues the insured's defense without obtaining a non-waiver agreement to reserve its coverage defense, the insurer waives such policy defense. Steptore v. Masco Constr. Co., 643 So.2d 1213, 1216 (La.1994). The elements of waiver are: (1) an existing legal right; (2) knowledge of the existence of that right; and (3) either (a) an actual intention to relinquish the right, or (b) conduct so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished. Id. at 1216. In the instant case, the plaintiffs' original petition states that "[a]t various times between 1947 and 1994, plaintiffs were employed as direct employees at the Arabi facility owned and operated by Amstar Corporation...." In September of 1999, the defense counsel retained by CNA specifically advised CNA that the plaintiffs were longtime employees of Tate & Lyle. CNA was also well aware of the employee related exclusions in its policies. As such, CNA was aware of its rights and acted in such a manner as to waive those rights.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Although summary judgment is now favored, the burden of proof remains on the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). See also Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230-31. In the instant case, the parties are in substantial agreement as to the facts. In is uncontested that CNA and/or its predecessors issued policies of insurance, which contained certain exclusions for employer liability, to Tate & Lyle and/or its predecessors. It is also uncontested that CNA provided a defense for Tate & Lyle for a period of four (4) years without securing a non-waiver agreement with the insured or providing the insured with a coverage reservation notice. As such, there are no genuine issues of material fact. Therefore, based on the law and the cases cited above, Tate & Lyle is entitled to partial summary judgment on the issue of waiver.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The plaintiffs' original petition has since been supplemented and amended three times for the purpose of adding plaintiffs, causes of action and executive officer defendants, as well as joining CNA as a direct defendant. As now pled, the plaintiffs allege injurious exposure to unreasonably loud noise during the course of their employment at the Arabi facility from 1939 through the present.