VICTORY, J.
 

 We granted a writ application in this insurance case primarily to determine whether the lower courts erred in holding that the insurer waived its right to enforce its policy, defenses because it breached its duty to defend. After reviewing the record and the applicable law, we find that the lower courts erred in holding the insurer liable for 100% of the claims asserted by the insured. In spite of breaching its defense duty, the insurer was entitled to rely on its policy defenses in limiting its indemnity obligation. Therefore, we reverse the judgment of the court of appeal on that issue and render judgment against the insurer for the proper amount due under the insurance policies. All other issues are remanded to the trial court.
 

 FACTS AND PROCEDURAL HISTORY
 

 A detailed history of the facts and procedural history of this case can be found at
 
 Arceneaux v. Amstar Corp.,
 
 06-1592 (La.App. 4 Cir. 10/31/07), 969 So.2d 755,
 
 unit denied,
 
 07-2486, 08-0053 (La.3/24/08), 977 So.2d 952, 953.
 
 (“Arceneaux II
 
 ”), but will be summarized here. On February 2, 1999, four employees of Tate & Lyle North America Sugars, Inc. (“T & L”) filed a cumulated action
 
 [1]
 
 against T & L for damages from noise exposure during their employment with T & L at its Domino Sugar Refinery. The period of alleged exposure was between 1947 and 1994.
 

 Continental Casualty Insurance Company (“Continental”) issued eight general liability insurance policies to T & L covering bodily injury occurring between March 1, 1963 and March 1, 1978. Each of the policies contained exclusions for bodily injury to employees of the insured arising out of the course and scope of employment. However, in the last policy, covering the period between March 1, 1975 and March 1, 1978, the exclusion was deleted by special endorsement effective December 31,1975.
 

 After T
 
 &
 
 L notified Continental of the lawsuit, in May of 1999, Continental retained the firm of Galloway, Johnson, Burr
 
 &
 
 Smith (“Galloway”) to defend T & L, and Galloway enrolled as co-counsel with T & L’s counsel. Continental did not reserve its rights to contest coverage or to assert any coverage defenses in connection with its defense of these claims.
 
 [2]
 
 In April, 2001, the plaintiffs filed a supplemental and amending petition adding 125 new
 
 *442
 
 plaintiffs to the suit alleging noise exposure between 1947 and 2001. Due to the large number of plaintiffs, the case was to be tried in flights of 15 plaintiffs by bench trial.
 
 [3]
 
 Trial was continued to allow for settlement on May 9, 2003, and on that date, without Continental’s consent, T & L settled with the first flight of 15 plaintiffs for $35,000 per plaintiff. On May 29, 2003, Continental was notified of the settlement. On June 6, 2003, Continental withdrew from the defense by letter, disclaiming liability based on the | ¡¡exclusions in its policies for injuries to employees. This was done based on Continental’s mistaken belief that all of its policies contained employee exclusions when in fact, as stated above, for the final 26 months of its last policy — from December 31, 1975 to March 1, 1978 — the employee exclusion had been removed. In addition, Continental reserved its right to disclaim coverage to the extent that “[t]he alleged bodily injury did not take place during one or more of the Continental Casualty policy periods,” and stated that its reservation of rights extended to any “future litigation regarding these policies.” In July of 2003, T & L sued Continental as a third party defendant. In its third party demand, T
 
 &
 
 L sought indemnification for the amounts it was required to pay plaintiffs, defense costs, and bad faith penalties under La. R.S. 22:658.
 

 In August 2003, and April 2004, plaintiffs filed their second and third supplemental and amending petitions adding Continental as a defendant and adding 160 new plaintiffs. (These plaintiffs, added after Continental disclaimed coverage and issued its reservation of rights letter are referred to as the “post-denial plaintiffs;” the plaintiffs in the original and first supplemental and amending petition who sued before this time are referred to as the “pre-denial plaintiffs.”) The post-denial plaintiffs’ claims were not tendered to Continental and Continental did not assume the defense of those claims.
 

 In October 2004, the trial court granted partial summary judgment to T & L, finding that Continental had waived its right to rely on its policy exclusion defenses. This judgment apparently was directed to only the pre-denial plaintiffs. The trial court based its ruling on the fact that Continental participated in T & L’s defense for a period of four years without securing a non-waiver agreement or issuing a reservation of rights declaration. This partial summary judgment was certified as a final judgment for the purposes of an appeal and was eventually affirmed by the court of appeal on December 14, 2005.
 
 Arceneaux v. Amstar Corp.,
 
 05-0177 (La.App. 4 Cir. 12/14/05), 921 So.2d 189
 
 (“Arceneawo
 
 /”). The court of appeal found Continental had waived its right to assert its policy exclusions based on the following:
 

 In the instant case, the plaintiffs’ original petition states that “[a]t various times between 1947 and 1994, plaintiffs were employed as direct employees at the Arabi facility ...” In September of 1999, the defense counsel retained by [Continental] specifically advised [Continental] that the plaintiffs were longtime employees of [T & L]. [Continental] was also well aware of the employee related exclusions in its policies. As such, [Continental] was aware of its rights and acted in such a manner as to waive those rights.
 

 921 So.2d at 192. Continental did not file a writ application with this Court, making this a final judgment. On November 11, 2004, T & L submitted defense bills to
 
 *443
 
 Continental for the first time and, after reviewing the policies, Continental realized that there were in fact 26 months (from January 1976 to March 1978) when the employee exclusion was not in effect. Accordingly, Continental offered to pay its pro rata share of the defense bills, but the offer was rejected. After attempts to get other insurers to share in the costs of defense failed, Continental notified T & L that it would pay 100% of the defense costs and defend all of the claims going forward under a full reservation of rights. On April 6, 2005, Continental paid T
 
 &
 
 L $1,419,168.95, the full amount of reimbursement for defense costs to date, and paid the full cost of defense from that point forward.
 

 Shortly before trial for the second flight of plaintiffs, on April 14, 2005, T & L announced that it had entered into a settlement with all of the remaining plaintiffs, under which it would pay $35,000 for each plaintiff who met certain settlement criteria. This settlement was entered into without Continental’s consent. Ultimately, T & L made payments that included 101 pre-denial plaintiffs and 116 post-denial plaintiffs.
 

 | ¡/Trial on T & L’s cross-claims against Continental was held between August 22 and August 25, 2005. The record was left open for the purpose of filing supplemental settlement agreements, and post-trial memoranda. Hurricane Katrina made landfall in St. Bernard Parish on August 29, 2005, and all court records were destroyed when the courthouse flooded, but, apparently, part of the record was reconstructed. On April 7, 2006, the trial court rendered judgment in favor of T & L in the amount of $9,848,542.33, exclusive of interest and costs, holding Continental liable for (1) indemnification for the full amount of the settlements of the 217 pre-denial and post-denial plaintiffs paid by T & L; (2) penalties under La. R.S. 22:658, as amended in 2003, for 25% of the $7,595,000 in indemnity for the 217 claims and $1,149,168.95 in defense costs already paid by Continental; and (3) interest from the date of judicial demand. The trial court found that Continental was liable for indemnity for the post-denial plaintiffs’ claims, even though those plaintiffs filed suit after Continental had issued its reservation of rights letter and disclaimed coverage, on the basis of waiver. Specifically, the trial court used the “relation back” theory found in La. C.C.P. art. 1153,
 
 [4]
 
 to find that the post-denial claims related back to the time of the pre-denial claims such that Continental’s waiver as to the pre-denial plaintiffs also applied to the post-denial plaintiffs. The trial court found that Continental waived its right to limit coverage to the policy period and its right to invoke its policy exclusions for claims made by employees. In addition, the trial court found that all the settlements were reasonable. Finally, the penalties awarded under La. R.S. 22:658 were for failure to pay the settlements and failure to pay defense costs of approximately $1,400,000.00 within 30 days from when T & L submitted the costs to it on November 11, 2004.
 

 On appeal, the Fourth Circuit affirmed in part, modified in part, reversed in part, and remanded the case to the trial court.
 
 Arceneaux v. Amstar Corp.,
 
 06-1592 (La.App. 4 Cir. 10/31/07), 969 So.2d 755
 
 (“Arceneaux II”), unit denied,
 
 07-2486, 08-0053 (La.3/24/08), 977 So.2d 952, 953. The
 
 *444
 
 court framed the issues raised in the appeal as being twofold: “(i) whether Continental’s waiver expanded the period of Continental’s coverage beyond its policy period — the fifteen years (1963 to 1978) for which it issued policies; and (ii) whether Continental’s waiver applies to the post-denial plaintiffs ...”
 
 Id.
 
 at 763. The court of appeal recognized that the trial court “materially expanded its prior decision [granting T & L’s motion for partial summary judgment] by finding that the scope of Continental’s waiver included waiving the enforcement of its policy period as well as waiving its right to assert the employee defense or to limit coverage to its policy period to the claims of the post-denial plaintiffs.”
 
 Id.
 
 at 764. Regarding the first issue, waiver of the policy period, the court of appeal affirmed the trial court’s finding that the policy period could be waived and that it was in fact waived because “[d]uring the period it was defending [T & L], Continental had in its possession the facts that it needed to assert a defense based on its policy period, yet it did not advise its insured that it intended to assert that defense.”
 
 Id.
 
 at 769. However, regarding the second issue, the court of appeal found the trial court erred in ruling that Continental’s waiver of policy defenses extended to the claims asserted by the post-denial plaintiffs.
 
 Id.
 
 at 770. The court of appeal found that the “relation back theory cannot support extending Continental’s waiver of its policy defenses to these cumulated multiple claims.”
 
 Id.
 
 Further, the court of appeal found that the requirements for waiver for the post-denial claims were not met because “[d]uring the four year period when Continental unconditionally provided a defense to [T & L], it was not aware of the claims of the post-denial plaintiffs [and therefore] |7had no existing or known right to deny coverage for claims that had not yet been asserted.”
 
 Id.
 
 By the time the post-denial claims were filed, Continental had disclaimed coverage, issued a reservation of rights letter, and ceased providing a defense; therefore, there could be no waiver of policy defenses for the post-denial claimants.
 
 Id.
 

 In addition to the waiver issue, the court of appeal addressed several other trial court findings. It affirmed the trial court’s finding that the settlements were reasonable, but found that because the trial court did not determine whether 15 of the claimants met the settlement criteria, Continental should be allowed on remand to have the trial court determine if those claims met the settlement criteria.
 
 Id.
 
 at 776. As to penalties, the court of appeal first found the trial court erred in applying the 2003 amendment to La. R.S. 22:658, which increased the penalty rate from 10-25%, because Continental’s breach of withdrawing its defense in June of 2003 occurred prior to the effective date of the amendment, August 2003.
 
 [5]
 

 In addressing the trial court’s award of a 25% penalty on the amount of the settlement award ($7,595,000), the court of appeal noted that the trial court’s reasons were silent as to that issue. The court of
 
 *445
 
 appeal found the trial court was manifestly erroneous in awarding these penalties because “Continental’s contention^] that all of the settlements were unreasonable and that it did not waive |sits right to enforce its policy term were reasonable and legitimate questions that it had the right to litigate without being found in bad faith.”
 
 Id.
 
 at 781. As to the penalties on defense costs, the court of appeal found that the trial court was not manifestly erroneous in finding Continental violated La. R.S. 22:658 by failing to pay defense cost invoices submitted in November 2004, and not paid until April, 2005.
 
 Id.
 
 at 783. However, the court of appeal amended the award of bad faith penalties on the defense costs to exclude from that calculation bills totaling $46,790.05 that were submitted on March 24, 2005, and timely paid on April 6, 2005.
 
 Id.
 
 at 784. In addition, the court of appeal affirmed the award of prejudgment interest but modified the award of interest on the 2005 settlements to provide that interest is due on such amounts only from the date on which T & L made payment of such settlements.
 
 Id.
 
 at 785. Finally, the court issued the following decree:
 

 For the foregoing reasons, the following findings of the trial court are reversed: (1) the extension of Continental’s waiver to the claims of the post-denial plaintiffs; (2) the finding that the 2003 amendment to La. R.S. 22:658 applies in this case; and (3) the award of La. R.S. 22:658 penalties on the settlement awards. The judgment of the trial court is modified in the following two respects: (1) the amount on which the La. R.S. 22:658 penalty award on the defense costs is calculated is modified to exclude $46,790.05 in defense costs that were paid within thirty days of the tender, and (2) the award of interest on the 2005 settlement awards is modified to provide that interest is due on such awards only from the date on which Tate & Lyle made payment of such awards. This case is remanded to the trial court for two reasons: (1) for a determination of whether the fifteen plaintiffs identified earlier in this opinion satisfied the settlement criteria; and (2) for a recalculation of the amounts due consistent with the findings set forth herein. In all other respects, the judgment of the trial court is affirmed.
 

 Id.
 

 After the Fourth Circuit issued its opinion, Continental paid T & L $4,548,255.00, representing indemnity payments for all pre-denial plaintiffs, excluding the 15 that were remanded, plus interest through June of 2008. In |naddition, Continental had already paid T & L the 10% penalty on the defense costs of $1,372,378.00 as awarded by the court of appeal. On October 13, 2008, the trial court ordered the parties to file cross-motions for summary judgment on the issues remaining after remand. Continental’s motion alleged: (1) it was only liable for $174,090.92 in indemnity for the post-denial plaintiffs in light of its coverage defenses; (2) it had no liability for' the 15
 
 [6]
 
 remanded plaintiffs because they did not meet the settlement criteria; (3) it was liable only for attorneys’ fees under La. R.S. 22:658 for delayed payment of the defense invoices submitted in November 2004, which was only a fraction of the defense costs submitted. T & L alleged: (1) Continental was liable for approximately $4,600,000.00 in indemnity for the post-denial plaintiffs because it had breached its duty to defend and therefore could not assert any policy defenses including the policy period and the employee exclusions; (2) Continental was liable for indemnity for the 15 plaintiffs because
 
 *446
 
 those settlements were reasonable; and (8) in addition to the 10% penalty, Continental was liable for the entire amount of attorneys’ fees sought for all the work on the third party demand against Continental from June 2003 until April 2005 — $359,-925.61 — because that suit was necessitated by Continental’s breach of its duty to defend. In these motions, Continental claimed T & L’s “new” theory that the breach of the duty to defend resulted in waiver of all coverage defenses for the post-denial plaintiffs came too late and was outside the scope of the limited remand; whereas T & L argued that while the court of appeal ruled Continental did not waive its coverage defenses for the post-denial plaintiffs, its remand order that the trial court recalculate the amount of damage necessitated a determination of whether the coverage defenses were actually applicable.
 

 |1ftAt the hearing on the cross-motions for summary judgment held on January 16, 2009, the trial judge did not did not rule on the waiver issue at this time, but announced he would hold Continental liable for all 12 remanded plaintiffs’ claims because the settlements were reasonable ($35,000), and for the entire amount of attorneys’ fees claimed by T & L ($359,-925.61). The trial court rendered a written judgment on these two issues on April 29, 2009, granting T & L’s motion and denying Continental’s motion. On May 6, 2009, the trial court rendered a final written judgment, incorporating the April 29, 2009, judgment, and additionally finding Continental liable for $4,060,000.00 with respect to the post-denial plaintiffs claims. In Reasons for Judgment dated April 23, 2009, the trial court explained that it was holding Continental liable for indemnity for all post-denial claims based on Continental’s breach of its duty to defend. The court reasoned that although these post-denial plaintiffs had not yet filed their claims when Continental issued its reservation of rights letter and terminated its defense of T
 
 &
 
 L, Continental knew or should have known to expect more claims at that time. The court reasoned that the initial lawsuit was filed as a cumulation of claims, which by its very nature indicates future claims would be added, and 130 more plaintiffs were added in 2001, which indicated more would probably be filed. Continental’s termination of its defense in 2003 was wrongful because the employee exclusions it was relying on did not exist from December 31,1975, through March 1, 1978. The trial court rejected Continental’s claim that its liability for the post-denial plaintiffs should be on a pro-rata basis for the years these plaintiffs were exposed that fell within the policy period and within the years the employee exclusion was not in effect in the amount of $174,090.92. The trial court criticized Continental for asserting this argument:
 

 | n Continental’s advancing this manner of calculating the insured share at this stage of the litigation speaks clearly, emphatically and undeniably of the intentional and wrongful termination and withdrawal of a defense to their insured and a deliberate breach of their contractual duty to defend [T & L] on the allegations of the Second and Third Supplemental and Amending Petitions asserting the claims of the “so-called” Post Denial Plaintiffs.
 

 In the end, the court denied Continental’s motion and granted T & L’s motion, finding as follows:
 

 This Court is constrained in the granting of the Continental’s Motion for Partial Summary Judgment by the very notion advanced in Continental’s own writing of resolution of any recalculation of indemnification due Continental on the settlement of the Post Denial Plaintiffs is more appropriately suitable for
 
 *447
 
 resolution, if any, at a trial on the merits. What Continental asks is this Court limit any future award on [T & L]’s claim as they propose. In that manner, any other potential remedy relate[s] to their deliberate, knowingly and retaliatory breach of their duty to defend [T & L] would leave [T & L] a “hollow remedy” or no remedy at all for a significant contractual breach.
 

 This court has reviewed the facts of this case and has determined Continental’s breach of the duty to defend [T & L] is so grievous, mean spirited and designed to cause financial harm to its insured [T & L], justice demands and it must fashion a remedy for the redress of that breach which is commensurate -with the breach of the duty to defend under these particular set of facts. This Court grants the Cross Motion of [T & L] for Partial Summary Judgment for the reasons stated herein.
 

 On May 10, 2010, a different panel of the Fourth Circuit
 
 [7]
 
 affirmed the trial court’s judgment.
 
 Arceneaux v. Amstar Corp.,
 
 09-0980, p. 1 (La.App. 4 Cir. 5/14/10), 2010 WL 1980204, — So.3d-, unpublished
 
 (“Arceneaux III”).
 
 At the outset, it is evident that the majority misunderstood the main issue on appeal, i.e., the $4,060,000.00 judgment against Continental resulting from the trial court’s finding that Continental waived its right to assert any of its policy defenses for the post-denial plaintiffs based on its breach of the duty defend. Instead, the court began the opinion by recognizing that Continental was arguing the trial court’s judgment ignored the court of | ^appeal’s prior remand order, but then stated that the judgment “resulted in the granting of a motion for summary judgment in favor of [T & L], casting judgment against Continental [ ] in the amount of $359,925.21 and settling with 15 plaintiffs.” Later in the opinion, the court of appeal did acknowledge Continental’s argument that it was not liable for the full indemnity amount based on its policy defenses, but rejected the argument finding that the trial court reasoned the coverage defenses were based in part on the employee exclusion, and “it was determined at trial that no such exclusions existed during the period of time in question.”
 
 Id.,
 
 pp. 3-4, — So.3d at- -. After recognizing that the duty to defend is broader than the duty to indemnify and may exist unless the factual allegations of plaintiffs’ petition unambiguously exclude coverage, the court of appeal found there was no error in the trial court’s finding Continental grievously terminated its duty to defend.
 
 Id.,
 
 p. 5, — So.3d at-. In addition, the court of appeal found no error in the trial court’s ruling that Continental was hable for the 12 remanded plaintiffs’ claims.
 
 Id.,
 
 p. 6, -So.3d at-. Finally, with regard to attorneys’ fees, the court of appeal affirmed the award, reasoning that where attorneys’ fees awarded are based on arbitrary nonpayment of benefits, they “need not be proven because the award is penal in nature” and that “the effort, substantial amount of time, coupled with discovery, and defense invested in this litigation is clearly reflected in the record.”
 
 Id.,
 
 p. 7, — So.3d at-. Judge Bonin strenuously dissented, finding that the opinion was silent as to the $4,060,000 indemnity award and strayed from the court’s previous limited remand order. Judge Bonin explained that the court of appeal had already held that waiver did not apply to the post-denial plaintiffs, yet the trial court
 
 *448
 
 on remand used waiver again to justify the indemnity award, which is prohibited by the “law of the case” doctrine. In Judge Bonin’s view, the trial court was restricted to decide what portion of the post-denial settlements Continental should indemnify T & L for, and that this portion must bear hsa rational relationship to the limited period for which Continental provided coverage.
 

 The court of appeal granted rehearing for the sole purpose of correcting a factual error in the original opinion, i.e., its statement that “it was determined at trial that no [employee] exclusions existing during the period of time in question: 1963 to 1978.” The court of appeal on rehearing stated:
 

 We are of the opinion that Continental is correct when it asserts in its application for rehearing that “all of Continental’s policies did contain employee exclusions” except for the last 26 months of Continental’s 15-year coverage period. While the parties have vigorously disputed the applicability of the employee exclusions, the existence of those exclusions for the relevant time period did not appear to be in dispute.
 

 Inexplicably, although this appeared to be the sole finding on which the court of appeal relied in affirming the $4,060,000.00 indemnity award on original hearing, it did not change or reanalyze this issue in light of this factual error. We granted Continental’s writ application primarily to determine whether the lower courts erred in awarding T & L $4,060,000.00 in indemnity for the post-denial plaintiffs’ claim based on Continental’s breach of its duty to defend.
 
 Arceneaux v. Amstar Corp.,
 
 10-2329 (La.1/28/11), 56 So.3d 955.
 

 DISCUSSION
 

 Law of the case
 

 Continental’s first assignment of error involves the “law of the case” doctrine. Specifically, Continental argues the trial court and the Fourth Circuit violated the law of the case doctrine in ruling, and affirming on remand, that Continental waived its policy defenses with respect to the post-denial claims by breaching the duty to defend. Continental argues that the Fourth Circuit held in
 
 Arceneaux II
 
 that Continental had not waived its defenses with respect to the post-denial claims; therefore, the trial court was precluded from making such a ruling |14again, even though the waiver was found to be because of a breach of the duty to defend, rather than relation back of the waiver of the pre-denial claims.
 

 The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case.
 
 Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.,
 
 260 La. 325, 256 So.2d 105 (1971).
 

 The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite reliti-gation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.
 

 Petition of Sewerage and Water Bd. of New Orleans,
 
 278 So.2d 81, 84 (La.1973). However, even when applicable, the law of the case is discretionary and should not be applied in cases of palpable error or where application would result in injustice.
 
 Id.
 

 
 *449
 
 T & L argued that while the court of appeal ruled Continental did not waive its coverage defenses for the post-denial plaintiffs, its remand order that the trial court recalculate the amount of damage necessitated a determination of whether the coverage defenses were actually applicable. According to T & L, this allowed its argument on remand that the coverage defenses did not apply because Continental breached its duty to defend.
 

 We are troubled because it appears the trial court basically ignored the Fourth Circuit’s findings on remand in determining: (1) Continental knew or should have known there would be future claims at the time they waived coverage as to the pre-denial plaintiffs; and (2) Continental’s breach in failing to defend was so egregious that the only possible remedy was to make Continental pay indemnity 11sfor claims not covered by their policies. Just as troubling is the fact that the court of appeal majority after remand failed to consider the limited nature of the prior remand order and the specific findings made on original hearing that would have, if given effect, preponderated against penalizing Continental in such a severe fashion. For instance, the Fourth Circuit in
 
 Arcen-eaux II
 
 found that during the four-year period Continental was unconditionally providing a defense to T & L, it was not aware of the claims of the post-denial claimants and therefore could not have waived its right to deny coverage as to those claimants. Further, the Fourth Circuit held that by the time the post-denial claims were filed, Continental had disclaimed coverage and therefore there could be no waiver of policy defenses for the post-denial claimants. In addition, the court of appeal in
 
 Arceneaux II
 
 reversed the trial court’s imposition of 25% penalties on the indemnity award, finding “Continental’s contention^] that all of the settlements were unreasonable and that it did not waive its right to enforce its policy term were reasonable and legitimate questions that it had the right to litigate without being found in bad faith.” Further, the court of appeal specifically rejected T & L’s argument that Continental’s late payment of defense costs in April 2004 after the trial court granted T & L’s motion for partial summary judgment awarding defense costs in November 2004 was a bad faith act under the 2003 amendment to La. R.S. 22:658:
 

 Contrary to [T & L]’s argument, the trial court’s grant of partial summary judgment on the employee exclusion did not resolve the coverage issue entirely.
 
 Continental had denied coverage for any bodily injury that did not take place during one of its policy periods. Continental, therefore, was not in bad faith at that point so that there was no act of bad faith after the effective date of the amended version of the statute, and the pre-amendment version is applicable to this claim.
 
 (Emphasis added.)
 

 hJn spite of this ruling by the court of appeal on original hearing, on remand the trial court ruled that Continental had waived its policy defenses on the post-denial claims because its “breach of the duty to defend [T & L] is so grievous, mean spirited and designed to cause financial harm to its insured [T & L], ...” Not only is this contrary to the finding that the Continental did not waive its defenses as to the post-denial claims, its finding of grievous behavior is inconsistent with the court of appeal’s ruling in
 
 Arceneaux II
 
 that Continental was not in bad faith in litigating its policy defenses. Finally, the court of appeal made a prior ruling in
 
 Arceneaux II
 
 that Continental did not violate La. R.S. 22:658 by its late payment of defense costs; whereas on remand, the trial court awarded attorneys fees under La. R.S. 22:658 based on Continental’s late
 
 *450
 
 payment of defense costs. Because the trial court re-decided these issues on remand, and the court of appeal affirmed the trial court’s judgment, both courts violated the law of the case doctrine on these issues.
 

 However, waiver of policy defenses as to the post-denial plaintiffs is the main issue upon which this writ was granted. Because we recognize some validity to the argument that the trial court’s ruling on remand regarding the post-denial claims was made on different grounds from the court of appeal’s prior ruling on the waiver issue, in our discretion we will review the merits of the trial court’s ruling on the cross-motions for summary judgment
 
 de novo. Samaha v. Rau,
 
 07-1726 (La.02/26/08), 977 So.2d 880, 882.
 
 Indemnity owed for settlement of the post-denial claims
 

 The first issue is the amount of indemnity owed by Continental resulting from T & L’s settlement with the post-denial plaintiffs. The trial court found Continental owed the entire amount of the post-denial plaintiffs’ settlements because it breached its duty to defend. A review of the record and the law shows |17that Continental did breach its duty to defend T & L by issuing a denial of coverage and reservation of rights letter to T & L on June 6, 2003, and withdrawing from T & L’s defense. As stated above, this was done based on the mistaken belief that all of the policies contained employee exclusions, when in fact for the final 26 months of its last policy, the employee exclusion was no longer in effect. As explained in
 
 Yount v. Maisano,
 
 627 So.2d 148, 153 (La.1993), “the insurer’s obligation to defend suits against its insured is broader than its liability for damage claims.” “The insurer’s duty to defend suits brought against its insured is determined by the allegations of the injured plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.”
 
 Id.
 
 (Citing
 
 American Home Assur. Co. v. Czarniecki,
 
 255 La. 251, 230 So.2d 253 (1969);
 
 Meloy v. Conoco, Inc.,
 
 504 So.2d 833 (La.1987)). “Thus, if assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.”
 
 Id.
 
 The allegations of the petition are liberally construed to determine whether they set forth grounds which bring the claim within the insurer’s duty to defend.
 
 Id.
 

 Here, the petitions allege bodily injury from noise exposure for a wide range of years, from 1947 to 1994, some of which falls within the time the employee exclusions were not in effect. Therefore, the petitions do not unambiguously exclude coverage and Continental breached its duty to defend by withdrawing its defense in June 2003. Thus, the issue is whether Continental waived its policy defenses, including the coverage periods and the employee exclusion, by breaching its duty to defend. We find that it did not.
 

 The trial court reasoned that Continental’s breach of the duty to defend caused a waiver of the policy defenses and exclusions benefitting Continental, | ^resulting in a finding that Continental was liable for the entire settlement amount. In so doing, the trial court confused breach with waiver. “Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege.”
 
 Steptore v. Masco Const. Co., Inc.,
 
 93-2064 (La.8/18/94), 643 So.2d 1213, 1216 (cites omitted). “Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to
 
 *451
 
 induce a reasonable belief that it has been relinquished.”
 
 Id.
 
 (Cites omitted.) As an insurer is charged with knowledge of the contents of its own policy, “when an insurer, with knowledge of facts indicating non-coverage under the insurance policy, assumes or continues the insured’s defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense.”
 
 Id.
 
 (Cites omitted.) “Waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered.”
 
 Tate v. Charles Aguillard Ins. & Real Estate, Inc.,
 
 508 So.2d 1371, 1375 (La.1987). “Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client’s interest.”
 
 Steptore, supra
 
 at 1216. For instance, in
 
 Steptore,
 
 this Court held that the insurer waived its right to deny coverage based on its insured’s violation of a warranty as to the location of the insured’s barge because the insurer, with knowledge that the barge was not located within the area of the navigation warranty at the time of the claim, voluntarily assumed and continued the insured’s defense without reserving its rights to deny coverage.
 
 Id.
 

 11flThe reasoning for this logic is clear; where the insurer undertakes to defend the insured with knowledge of facts indicating non-coverage under the policy, the insured is led to believe the insurer has relinquished that right and acts accordingly. From that point, the insured has the right to believe the insurer’s attorney is acting in his best interest without regard to coverage defenses the insurer has seemingly relinquished. As stated by the court of appeal in
 
 Arceneaux II,
 
 a belated disclaimer may prejudice the insured because it loses the opportunity to assume and manage its own defense.
 
 Arceneaux II, supra,
 
 969 So.2d at 768. Therefore, the insurer cannot later avoid liability based on a coverage defense if it has assumed the defense without a reservation of rights and with knowledge of facts which would bring the claim outside the policy based on that defense.
 

 Breach of a duty to defend, on the other hand, has nothing to do with waiver of rights in the insurance context. When the insurer breaches its duty to defend, it is not misleading the insured into believing there could be coverage under the policy. The insurer is not manifesting an intent to relinquish its right to deny coverage under the policy; it is doing the opposite by expressly denying coverage under the policy. In such a case, waiver principles simply do not apply.
 
 [8]
 

 T & L relies on this Court’s opinion in
 
 Thomas W. Hooley & Sons v. Zurich General Acc. & Liability Ins. Co.,
 
 235 La. 289, 103 So.2d 449 (1958), to support the trial court’s judgment that Continental’s breach of its duty to defend resulted in a waiver of its coverage defenses. In
 
 Hoo-ley,
 
 the insurer denied liability for proper
 
 *452
 
 ty damage and did not provide a defense to its insured. The insured then proceeded to repair the property with the agreement of the claimant, and claimed |2othe insurer was liable to indemnify it under the terms of the policy. The insurer sought to evade liability claiming the insured violated the “no action” clause of the policy, which prohibited the insured from voluntarily settling or paying claims prior to final judgment obtained against it. This Court disagreed, holding as follows:
 

 ... by the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the ‘no action’ clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him. Especially when as here liability to the third person is unquestioned, and after a denial of coverage by the insurer the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise, the insurer should be unable to claim that reimbursement to its insured of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer.
 

 103 So.2d at 452-53. While
 
 Hooley
 
 did find a waiver of a policy provision by breach of the duty to defend, the provision was unrelated to coverage and related only to a preliminary matter dealing with the insurer’s defense obligation. The narrow holding of
 
 Hooley
 
 cannot be extended to find waiver of other insurance contract provisions, particularly those related to coverage.
 
 Hooley
 
 simply stands for the proposition that where an insurer wrongfully refuses to defend its insured, the insured is free to settle the case against it without the insurer’s approval.
 

 Here, the trial court determined “it must fashion a remedy for redress of that breach which is commensurate with the breach of the duty to defend.” However, that remedy, waiver of all policy defenses, is not supported by law. The result of the trial court’s holding is judicial legislation, imposing a penalty on the insurer that is not provided for by the legislature and is in fact on top of penalties already provided by the legislature. The duty to defend is provided in the insurance contract; therefore, its breach is determined by ordinary contract law principles and | ⅞1 the insurer is liable for the insured’s reasonable defense costs. William Shelby McKenzie and H. Alston Johnson, III,
 
 Louisiana, Civil Law Treatise: Insurance Law and Practice,
 
 Vol. 15, § 215, p. 614 (3rd Ed.2006). If the breach is found to be in bad faith, statutory penalties are imposed under La. R.S. 22:658 (now La. R.S. 22:1892). The remedy created by the lower courts in this case judicially imposes a result that would permit insureds to reap a windfall of potentially enormous profits, far beyond the natural consequences of the insurer’s bad faith breach of the duty to defend, and far beyond the scope of the insurer’s contractual undertaking.
 

 In light of the above, we find the lower courts erred in holding Continental liable for $4,060,000.00 in indemnity for the post-denial claimants. The case was remanded for the trial court to recalculate the amount due given the court of appeal’s ruling that no waiver of coverage defenses occurred with respect to the post-denial claimants. Continental was entitled to rely on its coverage defenses on remand: namely, that the policies are occurrence based policies and some of the exposures/occurrences did not occur during the
 
 *453
 
 period of the policies, and that the policies contain exclusions for bodily injury to employees and these exclusions were in effect for the duration of the policies with the exception of 26 months, from December 31, 1975, to March 1, 1978. Continental submitted a detailed calculation of the amount owed as an exhibit to its motion for summary judgment on remand.
 
 [9]
 
 Continental argues it is liable only for a pro rata share of the entire settlement based on the dates of exposure that corresponded to the policies’ coverage period and the dates when the employee exclusion was not in effect.
 

 This argument is based on this Court’s holding in
 
 Southern Silica v. Louisiana Ins. Guar. Ass’n,
 
 07-1680 (La.4/8/09), 979 So.2d 460. In
 
 Southern Silica,
 
 the issue presented was whether, in a long-term latency disease case, an insured claiming indemnity from the Louisiana Insurance Guaranty Association (“LIGA”), must first collect “other insurance available to the insured” from all other insurers covering the periods of exposures before attempting to collect from LIGA. Relying on
 
 Norfolk Southern Corp. v. California Union Ins. Co.,
 
 02-0369 (La.App. 1 Cir. 9/12/03), 859 So.2d 167, 198,
 
 writ denied,
 
 03-2742 (La.12/19/03), 861 So.2d 579, this Court held that for long-latency occupational claims involving long-term exposure, liability should be allocated on a pro rata basis over all periods in which the exposure took place, including years in which the insured was uninsured. For uninsured periods, the insured is treated as being self-insured and is assigned a pro rata share. In
 
 Norfolk Southern,
 
 the court explained:
 

 Underlying the holdings in the Louisiana cases addressing allocation in long-term losses spanning multiple policy periods is the concept that insurers may limit their liability to discrete and finite periods. The exposure theory, upon which the Louisiana allocation approach is based, relies on the principle that an insurer will only be responsible within the terms of its policy for those damages arising out of the period the policy is in effect. In short, each insurer is responsible, up to the limits of its policy, for all damages emanating from occurrences taking place during the insurer’s policy period. All damages emanating from occurrences taking place outside the policy period are covered by [other] insurer on the risk at the time[s] the occurrence[s] took place.
 

 979 So.2d at 465-66.
 

 Based on this established approach, Continental calculated the dates of exposure and determined that its pro rata share of the post-denial claims was $174,090.92. T & L did not challenge the calculation, but argued Continental was liable for the entire $4,060,000.00 based on waiver of its defenses. Interestingly, the trial court reproached Continental for relying on the
 
 Southern Silica/Norfolk Southern
 
 pro rata approach, stating that it “speaks clearly, emphatically and undeniably of the intentional and wrongful termination and withdrawal of a defense to their insured and a deliberate breach of their contractual duty to defend ...” Obviously, Continental’s reliance on established case law in arguing its case has nothing to do with whether it intentionally and wrongfully breached its duty to defend in 2003. Moreover, these cases clearly support Continental’s position that it is liable only for exposures occurring during the coverage periods of its policies when the employee exclusions were not in
 
 *454
 
 effect. Based on the evidence in the record, we can determine the indemnity due based on Continental’s motion for summary judgment — remand is unnecessary. We render judgment in favor of T & L for indemnity for the post-denial plaintiffs’ settlements in the amount of $174,090.92.
 
 [10]
 

 Remaining issues
 

 The remaining issues before us need to be remanded for detailed factual considerations. The first relates to whether certain plaintiffs met the settlement criteria. The court of appeal in
 
 Arceneaux II
 
 affirmed the trial court finding that the settlements were reasonable, but remanded the case for a determination of whether certain claimants met the settlement criteria. On remand, the trial court found Continental was liable for indemnity for all 12 claimants because the settlements were reasonable. Continental argues this is contrary to the remand order because the trial court did not address the settlement criteria at all. Continental argues 10 of the claimants did not meet the hearing loss requirements [^because they are based on the wrong type of audiograms. T & L argues no specific type of audiogram is required. Based on these arguments and the fact that the trial court did not determine whether the claimants met the settlement criteria, this issue is remanded to the trial court to make a particularized determination of whether each of the 12 claimants at issue met the specific settlement criteria.
 

 The second remaining issue is the amount of attorney fees owed by Continental under La. R.S. 22:658 as a result of its late payment of certain defense bills submitted in November 2004. The trial court awarded $859,925.51, representing the total amount of attorney fees incurred in litigating all aspects of T & L’s third party demand from June 2003 through April 6, 2005. Continental argues the amount owed must be limited to amounts incurred in collecting the invoices submitted on November 11, 2004, and, because T & L failed to carry its burden of showing the particular fees incurred in collecting the invoices, no fees are due.
 

 La. R.S. 22:658 (now La. R.S. 22:1892), provides:
 

 Failure to make such payment within 80 days ... shall subject the insurer to a penalty in addition to the amount of loss, of ten percent damages on the amount found to be due from the insurer to the insured ... together with all reasonable attorney fees for the prosecution and collection of such loss.
 

 The court of appeal found Continental’s only bad faith act was its late payment of attorney fees billed in November, 2004. Penalties for this violation were awarded and paid by Continental in the amount of $137,237.80. The court of appeal reversed the trial court’s earlier finding that Continental was in bad faith for failing to pay indemnity on the post-denial claims. Therefore, the only bad faith failure causing loss upon which attorney fees can be assessed is the collection of bills submitted in November, 2004 paid on April 6, 2005. According to the bills submitted by T & L, the total attorney fees between
 
 *455
 
 November 11, 2004 and March |254, 2005, were $114,415.00. These bills do not distinguish between legal fees used in defense of the claims of the third party demand and those expended to obtain reimbursement of defense costs. The attorney fees for the “prosecution and collection of such loss” are only those fees expended in prosecuting and collecting the late payment of defense costs. The case is remanded for a determination of the amount of attorney fees paid to collect on the late payment of defense bills submitted on November 11, 2004. Finally, any award of legal interest on these fees can be assessed only from the date of judgment.
 
 Sher v. Lafayette Ins. Co.,
 
 07-2441 (La.4/8/08), 988 So.2d 186, 203.
 

 CONCLUSION
 

 An insurer’s breach of the duty to defend does not result in a waiver of all coverage defenses when the insured seeks indemnity under the policy. Waiver of coverage defenses results when an insurer, with knowledge of facts indicating non-coverage, undertakes to defend an insured without reserving its rights to deny coverage. Here, the insurer had disclaimed coverage at the time the post-denial plaintiffs were added to the suit, and thus did not provide a defense to those claims; therefore, waiver principles do not apply. While T & L was entitled to reasonable defense costs based on this failure to defend, which Continental paid in the amount of $1,419,168.95, and penalties on any amounts which were not timely paid, T & L was not entitled to indemnity from Continental without regard to the provisions of the policies which limited Continental’s indemnity obligation. Based on the coverage defenses limiting coverage to a 26 month period and the prolonged period of exposures that resulted in the claimants’ injuries, Continental is only liable to T & L in indemnity on a pro rata basis for the exposures taking place during the coverage period. Review of the record shows the amount due in indemnity for the post-denial plaintiffs is $174,090.92. Outstanding issues 126requiring remand are a determination of whether the 12 remaining post-denial plaintiffs met the settlement criteria and the amount due those plaintiffs based on the pro rata approach, and the amount of attorney fees due T & L based on Continental’s late payment of defense bills submitted in November 2004. T & L is entitled to attorney fees incurred in collecting the invoices submitted.
 

 DECREE
 

 For the reasons stated herein, the judgment of the court of appeal is reversed in part and judgment is rendered against Continental in the amount of $174, 090.92 for indemnity for the post-denial plaintiffs’ settlements. The case is remanded to the trial court for a determination of whether 12 claimants met the settlement criteria and the amount due each and the amount of attorney fees due for late payment of defense costs, each determination to be made in accordance with the directives of this opinion.
 

 REVERSED AND RENDERED IN PART; REMANDED.
 

 [1]
 

 . A cumulated action is provided for in La. C.C.P. art. 463 and is "the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants.”
 

 [2]
 

 . As will be discussed, an insurer who unconditionally undertakes the defense of its insured with knowledge of a coverage defense has been held to have waived the coverage defense.
 
 See Steptore v. Masco Const. Co., Inc.,
 
 643 So.2d 1213 (La.1994). In order to reserve its rights to assert coverage defenses while undertaking the representation of its insured, the insurer must reserve its rights to do so, typically by the issuance of a reservation of rights letter.
 

 [3]
 

 . Plaintiffs stipulated the damages per plaintiff did not exceed $50,000, the threshold amount for jury trials under La. C.C.P. art. 1732(1).
 

 [4]
 

 . La. C.C.P. art. 1153 provides: "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."
 

 [5]
 

 . Specifically, T & L argued that the act of bad faith was Continental’s failure to pay the defense costs within 30 days after the trial court’s grant of partial summary judgment (October 2004) and this occurred after the effective date of the amendment. The court of appeal disagreed, reasoning as follows:
 

 Contrary to [T & L]'s argument, the trial court's grant of partial summary judgment on the employee exclusion did not resolve the coverage issue entirely. Continental had denied coverage for any bodily injury that did not take place during one of its policy periods. Continental, therefore, was not in bad faith at that point so that there was no act of bad faith after the effective date of the amended version of the statute, and the pre-amendment version is applicable to this claim.
 

 Id.
 
 at 780-81.
 

 [6]
 

 . Actually, as reflected in briefs to this Court, there are only 12 remanded plaintiffs at issue.
 

 [7]
 

 . The panel rendering the 2007 judgment consisted of Judges Murray, Jones and Tobias. The panel rendering the 2010 judgment consisted of Judges Bagneris, Lombard, and Bo-nin. Judge Bonin dissented.
 

 [8]
 

 . T & L’s argument that because Continental breached the insurance contract by not fulfilling its duty to defend, it cannot enforce any terms of the contract — i.e., the policy defenses — is unavailing. The principle it is trying to invoke is apparently that when one party breaches a contract and prevents one of the primary purposes from being fulfilled, the breaching party cannot force the other party to perform under the contract.
 
 Makofsky v. Cunningham,
 
 576 F.2d 1223, 1232 (5th Cir.(La.) 1978). Here, it is not the breaching party that is trying to enforce the contract, it is T & L.
 

 [9]
 

 . This exhibit sets forth each post-denial plaintiff's dates of employment and divides the number of months that fell within the coverage period by the plaintiffs total months of exposure to reach the amount due each post-denial plaintiff.
 

 [10]
 

 . This figure is reached by adding the amount due each post-denial plaintiff who was employed and exposed during the coverage period. As stated in footnote 7, the amount due each plaintiff is based on ratio of the years of coverage and the years of employment/exposure to reach a percentage by which $35,000.00 is multiplied. For instance, a post-denial plaintiff who was not employed during the coverage period is entitled to no recovery. A post-denial plaintiff who was employed from June 2, 1955 through September 1, 2000 would be entitled to 4.77% of $35,000.00 because 26 months (coverage) is 4.77% of the approximately 555 months the plaintiff was employed and exposed.