PITMAN, J.
[, Defendants/Appellants George A. Olsen, Jr. and Hanh T. Williams (“Trustee Williams”) appeal the trial court’s granting of summary judgment in favor of Armand L. Roos, in his capacity -as testamentary executor of the succession of Fred Lang-ford Houston (“the Succession”), in finding that Defendants (assignees of an oil and gas lease on property owned by the Succession) were solidarity liable to the Succession for the full amount of royalties they received prior to the invocation of this concursus proceeding filed by J-W Operating Company (“J-W”), subject to a credit for the original amount paid by the first assignee of the subject oil and gas lease. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

FACTS

J-W, an oil well owner and operator, filed this matter as a concursus proceeding, naming as defendants George A. Olsen, Trustee Williams and the Succession.[1]
In July 1974, Fred L. Houston (“Houston”) and his wife granted a mineral lease to Tenneco (“Tenneco Lease”) over 40 acres of land they owned in DeSoto Parish. Tenneco, or its assignees, drilled ten wells on the three units affecting the tract. The lease has been highly productive. At some point, J-W became the owner and operator of these wells and units. Mrs. Houston died, and Houston became the sole owner of the tract and the lease.
| RIn August 2005, Houston formed an inter vivos trust named the Fred L. Houston Trust (“the Trust”). He placed various assets, including the Tenneco Lease, in the trust corpus. The instrument declared the Trust “irrevocable and may not be revoked at any time under any circumstances,” including “any action to ... modify or negate Settlor’s intended effect of protecting the properties and assets transferred to the Trust.” Houston was both the income and principal beneficiary, with the provision that, upon his death, “his interest in the trust shall vest in his estate (his heirs or legatees) free of trust.” The Trust was also designated as a spendthrift trust to the maximum extent permitted by the applicable laws governing such trusts. It gave the trustee, insurance broker Hanh T. Williams, broad management powers and a compensation of 50 percent of all revenue from a separate lease in Webster Parish. Trustee Williams signed not only the instrument of trust, but also the act of assignment whereby Houston transferred the Tenneco Lease to the Trust corpus.
Mr. Olsen, president of Noble House Investments, Inc. (“Noble House”), desired to purchase the Trust’s mineral interest in the Tenneco Lease from Houston; as a result, Noble House made an offer to Houston to buy for $34,000. On April 26, 2006, Houston, in his personal capacity, executed an assignment of royalty interest in the Tenneco Lease to Noble House (“Noble House Assignment”). The assignment made no mention of the irrevocable trust Houston had created and in which this particular property was placed. Trustee Williams did not sign this assignment.
*1126 |sBy letter agreement that same day, Noble House promised to assign to Trustee Williams 50 percent of the interest purchased as soon as the new division orders were complete. Noble House executed such an assignment to Trustee Williams in August 2006 (‘Williams Assignment”) after she paid $14,000 for her share of the minerals. The remaining 50 percent of Noble House’s interest was assigned to Mr. Olsen in September 2007 (“Olsen Assignment”).
Houston died in September 2008. Under the Trust instrument, the corpus, including the Tenneco Lease, immediately vested in his estate. Although Trustee Williams was named in Houston’s will as the independent executor of his estate and was to receive an executor’s fee of 20 percent of the gross estate, the court confirmed attorney Armand Roos as testamentary executor of the Succession. Mr. Roos notified J-W that the Trust, and the Succession, claimed the Tenneco Lease. This resulted in J-W filing the concursus proceeding in DeSoto Parish naming Mr. Olsen, Trustee Williams and the Succession as defendants. At issue was ownership of accrued royalties of $67,240.98, which J-W placed in the registry of the court.
Mr. Olsen and Trustee Williams both answered the concursus proceeding, claiming that the assignment from Houston to Noble House, if conveying a thing he did not own, was only a relative nullity (not an absolute nullity), which included a warranty against eviction. They contended that, upon Houston’s death, the Tenneco Lease reverted to his estate and the Succession was bound to honor the warranty. Each demanded recognition of his or her 50 percent interest.
|4The Succession filed an answer to the concursus proceeding, asserting its ownership of 100 percent of the money deposited in the registry of the court. In addition, it filed cross-claims against Mr. Olsen and Trustee Williams, as defendants, and asserted in “Count I” that the assignments by Houston to Noble House, and those from Noble House to Trustee Williams and then Mr. Olsen, were absolute nullities and,, further, that all pf the right, title and interest in the Tenneco Lease became, and still remained, the property of the Succession.
In “Count II” asserted by cross-claim against 'only Trustee Williams, the Succession alleged that she had committed a breach of trust under La. R.S. 9:2081, et seq. It further alleged that, as trustee, she was prohibited by law from buying or selling any property of the- Trust to or from her business associates, unless the Trust document provided otherwise, or unless specifically authorized by a court of competent jurisdiction after a contradictory hearing. The Succession also alleged that Trustee Williams and Mr. Olsen were the only two members of a Louisiana limited liability company known as Platinum Interests, LLC, and were, therefore, business associates. It claimed that, at all times between August 2005 (when the Trust was created) and September 2008 (when Houston died), all right, title and interest in the Tenneco Lease was the property of the Trust and that Trustee Williams was personally liable for any loss of depreciation in value of the Trust estate resulting from the breach and for any profit made by her through the breach, or that she was liable for any profit that would have accrued to the Trust estate had there been no breach.
| Jn the cross-claims, the Succession prayed to declare the assignments null and for judgment awarding-the Succession the value ,of all sums paid to Noble House, Trustee Williams and Mr. Olsen pursuant to the Tenneco Lease, minus a credit for *1127 the $35,000 paid by Noble House to Houston; awarding the Succession attorney fees and costs from Trustee Williams; and denying her all compensation or, in the alternative, awarding only a reduced compensation for services rendered as Trustee.
Both Mr. Olsen and Trustee Williams filed many exceptions to the Succession’s cross-claims, including peremptory exceptions of no right of action, no cause of action and prescription. They also filed dilatory exceptions of nonconformity of the petition, vagueness and improper form of the pleading. Declinatory exceptions of lack of jurisdiction and improper venue were also filed, arguing that the Succession could not bring the claims of “Count II” of the cross-claim in DeSoto Parish and that the proper venue was the district court of the parish in which Houston was domiciled when the Trust was created or the parish in which Trustee Williams was domiciled.[2] The Succession filed a reply memorandum regarding the declinatory exceptions of lack of jurisdiction and improper venue, stating that it intended to amend the cross-claim to remove “Count II” against Trustee Williams for violation of La. R.S. 9:2805(A) and a corresponding breach of trust under La. R.S. 9:2801 and that the claim would be brought in a separate action.
lfiThe trial court rendered a judgment sustaining Mr. Olsen’s exception of nonconformity of the petition as required by to La. C.C.P. art. 891 as it related to the parties’ domicile and found the exceptions of lack of jurisdiction and improper venue were well-founded. Those exceptions were sustained at the Succession’s cost. However, all of the other exceptions filed by Mr. Olsen were denied. On the same day, the trial court also sustained Trustee Williams’s exceptions of lack of jurisdiction and improper venue as to “Count II,” and denied the exceptions of no right of action, no cause of action and improper form of the pleadings.
The Succession then filed an amended cross-claim to cure the alleged defects by setting forth the domicile of the parties and removing “Count II” for violations due to breach of trust. Despite the deletion of “Count II” from the amended cross-claim, the Succession still prayed for judgment awarding it the value of all sums paid to Noble House, Trustee Williams and Mr. Olsen pursuant to the Tenneco Lease, minus a credit for the $35,000 paid by Noble House to Houston pursuant to “Count I” of the original cross-claim.
The Succession filed a motion for partial summary judgment seeking a declaration that the' Succession owned the Tenneco Lease and for an award of all accrued royalties, less a credit for the purchase price paid by Noble House. It argued that all three assignments were absolute nulli-‘ ties that violated the spendthrift provision of the Trust instrument and that the Noble House assignment was actually orchestrated by Trustee Williams, who, as trustee, was prohibited from acquiring Trust property. Mr. Olsen filed a cross-motion for partial summary judgment seeking an award of 1750 percent interest in the Ten-neco Lease. Trustee Williams did not file her own motion for summary judgment, but opposed the Succession’s.
The trial court found that the Noble House Assignment violated a rule of public order, i.e., that of protecting the settlor’s intent as set forth in the Trust document, and the sale of the corpus would divest the beneficiary of his interest. Therefore, the trial court ruled in favor of the Succession *1128 and declared all three assignments absolute nullities. Mr. Olsen and Trustee Williams appealed, and this court affirmed, finding that Mr. Roos, as testamentary executor of the settlor’s Succession, had a private right and cause of action to assert the absolute nullity of the assignments. As noted earlier, the Louisiana Supreme Court denied writs. J-W Operating, supra.
After the supreme court denied writs, the Succession filed a motion in the lower court for the release of all funds deposited in the concursus proceeding to the Succession, with the exception of J-W’s costs. On April 25, 2014, the trial court ordered that the funds deposited in the registry of the court by J-W, less its costs of $463, be released to the Succession.

The facts that concern the matter currently before the court:

Thereafter, the case continued in the lower court when the Succession filed a motion for summary judgment seeking judgment “awarding the Succession the value of all sums paid to Noble House, Williams and Olsen pursuant to the Oil, Gas and Mineral Lease entered into by Fred L. Houston and Eleanor H. Houston with Tenneco Oil Company ... minus a credit for |sthe $35,000.00 paid by Noble House” for the assignment from Houston.[3] None of the pleadings, i.e., the original cross-claim, the amended cross-claim and this motion for summary judgment, sought a judgment finding Mr. Olsen and Trustee Williams liable in solido.
In its memorandum in support of the motion for summary judgment, the Succession argued that, despite this court’s opinion and the writ denial by the supreme court, both Trustee Williams and Mr. 01-sen have refused to reimburse the royalties paid to them prior to the invocation of the concursus proceeding, which necessitated the filing of its motion. It is only in the memorandum that the Succession prayed for judgment against defendants Trustee Williams and Mr. Olsen, in solido, and in favor of the Succession in the amount of $122,375.42 (the amount paid to defendants under the Tenneco Lease since the contested assignments, but prior to the invocation of the concursus proceeding), plus legal interest from the date of each payment until paid, less the $35,000 paid by Noble House to Houston pursuant to the Noble House Assignment.
Mr. Olsen also filed a cross-motion for summary judgment, claiming that, under La. C.C. art. 2003, the Succession is not entitled to any refund of royalties, he is entitled to keep all royalties paid to him and he should receive the return of the $35,000 paid by Noble House. •
Trustee Williams opposed the Succession’s motion for summary judgment, claiming that genuine issues of material fact remained concerning |flwhether she owed the repayment of the royalties she had received prior to this court’s action declaring the assignment to her an absolute nullity. She also claimed she was not liable in solido with Mr. Olsen.
The motions were submitted on briefs. Although it was suggested by some parties that the trial court stay the matter pending the outcome of the action in Caddo Parish, the trial court issued its written ruling on the cross-motions for summary judgment and granted the Succession’s motion and denied the motion filed by Mr. Olsen.
*1129 Citing La. C.C. art. 2033 dealing with the effects of an absolutely null contract, the trial court cast Mr. Olsen and Trustee Williams liable, in solido, to the Trust for the full amount of the royalties received, subject to the $35,000 credit for the amount paid by Noble House. It addressed the issue of Houston’s culpability in transferring the property owned by the Trust to Noble House and stated in its judgment that the narrow issue was “whether the party seeking recovery entered into the contract in bad faith and for fraudulent purposes knowing that the contract contained a defect and was, therefore null.” The trial court found that Houston may have been aware that he did not own any rights in the Tenneco Lease; however, there was no evidence that he knew or understood this defect would render the Noble House Assignment null. Further, the trial court found there was no evidence that Houston knowingly embarked on an illegal scheme. Therefore, the trial court found that the Succession was not alleging Houston’s own turpitude in an effort to recover the royalties allegedly due. It also discussed why it considered Mr. Olsen and Trustee Williams to be h pliable in solido and found that, as trustee, Trustee Williams owed Houston a fiduciary duty; thus, she was found to be personally liable for all damages resulting from her breach of that duty. Both Trustee Williams and Mr. Olsen appeal the trial court’s decision.

DISCUSSION

Trustee Williams’s appeal

Trustee Williams’s brief raises two assignments of error, the first regarding whether genuine issues of material fact remained, and the second as to her liability, in solido, with Mr. Olsen.
Regarding the first assignment of error, Trustee Williams claims the trial court held that La. C.C. art. 2033’s provisions denying the recovery were inapplicable because there was insufficient evidence in the record to conclude that, at the time of the Noble House Assignment, Houston knew or understood that the defect would render the assignment a nullity. She argues that the trial court further held that there was insufficient evidence to find that Houston knowingly executed the assignment in furtherance of an illegal scheme and that, in doing so, it incorrectly interpreted La. C.C. art. 2033 and improperly shifted the burden of proof to the nonmovant. Thus, she claims that the judgment was improper' as a matter of law. She also argues that the judgment was improper because there were genuine issues of material fact as to what Houston knew at the time he executed the assignment, as well as whether his actions could be said to be illicit.
In her second assignment of error regarding her solidary liability with Mr. Olsen, Trustee Williams argues that solidarity is not presumed and can |nbe established only where the intent of the parties is clear or in cases allowed by law. She claims that the royalties were paid to her and Mr. Olsen separately and under different assignments. She also argues that, by finding them liable in solido, the trial court improperly resurrected the breach of trust causes of action it had previously dismissed by judgment sustaining the exceptions of lack of jurisdiction and improper venue.
Trustee Williams further argues that there was no privity of contract between Houston and herself regarding the Tenne-co Lease. She contends that people are solidarily liable only in cases in which each obligor is liable for the whole performance. She points out that the absolutely null assignments did not cause the same damages and that she was paid only approximately $40,000 pursuant to her assignment and Mr. Olsen was paid $81,000 as a result *1130 of his assignment and the assignment to his company, Noble House. She further claims the damages attributable to the various assignments are easily discernible from the record; and, if at all, she should be liable only for her portion of the royalties received.

Olsen’s appeal

In Mr. Olsen’s first assignment of error, he argues that, while the “law of the case” doctrine might ordinarily prevent this court from correcting prior error, its application is discretionary and should not prevent a court from correcting “palpable” error. He contends that this court erred earlier when it found that the Noble House Assignment thwarted Houston’s intent to protect the Trust corpus, thus violating an imperative rule of public order. Mr. Olsen further argues that this was incorrect since it attributed to the sale lasóme effect which the court felt compelled to correct. He contends that the assignment of the Tenneco Lease to Noble House did not thwart any intent because it did not transfer the Tenneco Lease to Noble House; it only happened to have retroactive effect years later because Houston later acquired, ownership of the object of that assignment.
Mr. Olsen also argues that neither the settlor nor a beneficiary owns trust property; it is owned by the trustee. Therefore, the sale by Houston to Noble House was only the sale of a thing belonging to another, which is not an absolute nullity, but only a relative nullity. He also claims that the sale of a thing belonging to another becomes valid if the seller acquires ownership from the true owner before the buyer brings an action for nullity.
In his second assignment of error, Mr. Olsen alleges that the trial court erred in finding that Houston did not know of the defect; and, as a result, the Succession was awarded past royalties. This assignment of error incorporates by reference Trustee Williams’s arguments that summary judgment was not appropriate because it has not been proven what Houston knew or intended at the time of the Noble House Assignment. In addition, he contends that Houston should not be allowed to profit from a defect known to him.
Mr. Olsen claims that Houston knew of the defect under La. C.C. art. 2033, which requires, as a general rule, that, in cases of an absolute nullity, the parties must be restored to the situation that existed before the contract was made. He further claims that, because Houston knew of the defect, the exception to the general rule applies. La. C.C. art. 2033 also 1^provides that a performance rendered under a contract that is absolutely null, because its object or its cause is illicit or immoral, may not be recovered by a party who knew or should have known of the defect that makes the contract null.
Based on this portion of La. C.C. art. 2033, Mr. Olsen argues that the district court erred in finding there was no evidence that Houston knew or understood this defect would render the Noble House Assignment null. He also claims that the district court erred in adding an additional or alternative requirement, namely that Houston “knowingly embarked on an illegal scheme.” He argues that the code article requires only knowledge of the defect and that the object or cause of the contract was illicit or immoral. For these reasons, Mr. Olsen contends that Houston is presumed to know the intent of the Trust instrument and is presumed to know that his subsequent assignment violated that intent; therefore, his Succession cannot demand the return of the fruits and revenues.
Mr. Olsen further argues that Houston is presumed to be in bad faith and, thus, should not be allowed to receive reimbursement of royalties paid to Noble *1131 House, himself and Trustee Williams. He contends that Houston knew he had transferred his interest in the Tenneco Lease to his Trust; and he is presumed to have known that, when he transferred an interest to Noble House, he did not own it. If he is to argue otherwise, Mr. Olsen claims his Succession bears the burden of proving it.
In his third assignment of error, Mr. Olsen claims that the trial court erred in finding that he and Trustee Williams are liable in solido to the 114Succession for the royalties that he, Noble House and Trustee Williams received. He incorporates Trustee Williams’s argument with regard to that issue and especially argues that the trial court was without jurisdiction to make a finding that she breached her duty as trustee. He contends that claim was the subject of a successful exception in the trial court and that any mention of this alleged breach of duty was improper. Mr. Olsen points out that the Succession had earlier acknowledged this and withdrawn its claim. He asserts that Trustee Williams did not breach her duty because she did not directly or indirectly buy property from the Trust for herself, further claiming that this is not mere parsing of the statute.
Despite his argument in Trustee Williams’s favor, Mr. Olsen still asserts that, while she may have been deemed to have violated her duty, he cannot be found solidarity liable with her because he had no duty to Houston, the Trust or the Succession, and there was no conspiracy to commit an intentional or willful act which would create solidary liability between them.
In his last assignment of error, Mr. Olsen argues that no interest should have been awarded. He claims interest can only be awarded “as prayed for or as provided by law.” La. C.C.P. art.1921. There is no contractual provision for interest in this case; and for damages ex delic-to, La. R.S. 13:4203, legal interest shall attach from the date of judicial demand, on all judgments, sounding in damages “ex delicto,” which may be rendered by any of the courts. He contends that, if the claim does not sound |isin damages ex delicto and a contract does not specify an award of interest, interest may not be awarded.
The Succession argues that, contrary to the appellants’ contention that this court should revisit the issue of relative or absolute nullities, the law of the case doctrine prohibits this court from revisiting its pri- or ruling that the assignments at issue were absolutely null.
The Succession also argues that the doctrine of law of the case requires that courts not revisit their prior rulings unless the evidence on a subsequent trial was substántialty different, controlling authority has since made a contrary decision of the law applicable to such issues or the prior ruling was clearly erroneous or would work a manifest injustice. It further argues that none of these apply in this case and that Mr. Olsen and Trustee Williams simply want another bite of the apple.
The Succession further argues that it is well settled that issues raised for the first time on appeal will not be considered by the appellate courts. It contends that Mr. Olsen argued for the first time in his brief that this court’s earlier opinion was incorrect and that legal interest on the recovered royalty payments should not have been awarded, even though the Succession had clearly demanded, in many prior filings, judgment against Mr. Olsen and Trustee Williams, in solido, for $122,375.42, together with legal interest thereon, from the date of each payment until paid, less the $35,000 paid by Noble House. It also points out that, in five *1132 briefs filed' by the parties in the lower court, none mentioned either issue; and, therefore, these issues are not properly before the court.
|1fiCiting La. C.C. art. 2033, the Succession also argues that the assignments to Noble House, Trustee Williams and Mr. Olsen must be treated as if they never occurred. It claims that it must be restored to the same rights Houston would have had had the assignments not been made. It further argues that, under these facts, all payments at issue and due the lessor under the Tenneco Lease would have been paid to the Trust and, following Houston’s death, to the Succession.
Further, the Succession argues that, to preclude recovery under La. C.C. art. 2033, the party seeking to recover must be shown to have entered the contract in bad faith and knew or should have known that, as a result of the defect, the contract would be deemed a nullity. It argues that the mere fact that a party seeking to recover under an absolutely null contract is aware of the defect is not sufficient to prevent recovery under La. C.C. art. 2033 and that the party seeking recovery must also be aware of the effect of the defect before recovery is precluded. The Succession further points out there is no evidence that Houston knew his assignment of the Tenneco Lease to the Trust would render the Noble House Assignment null. It claims that Mr. Olsen and Trustee Williams impute a malicious intent to Houston’s alleged statement to Mr. Olsen that he owned the mineral interest and leap to the conclusion that he acted in bad faith.
The Succession also argues that the trial court properly applied the burden of proof for the nonrecovery provisions of La. C.C. art. 2033, It claims that, under appellants’ arguments, in order to recover under the code article, a party seeking to recover must always prove a negative, i.e., that he |17did not act in bad faith and did not know of the defect which rendered the contract absolutely null or its effect.
Responding to other assignments of error raised, the Succession claims that Trustee Williams’s conduct as trustee was illegal and highly improper; Mr. Olsen is not an innocent party who was somehow duped by Houston and/or Trustee Williams; Trustee Williams’s lack of privity argument ignores the blatant realities of the situation; and the trial court did not improperly rely on causes of action for Trustee Williams’s violation of the Louisiana Trust Code.
The Succession further argues that there is undisputed evidence showing that Trustee Williams and Mr. Olsen were both active participants in the scheme for Trustee Williams to purchase Trust property for herself; and, as such, they should be solidarity liable for all damages caused by their unsavory conduct. For these reasons, it contends that summary judgment should be affirmed.

Law of the case

Appellants’ first argument states that this court erred in its earlier opinion in finding that the Noble House Assignment, the Olsen Assignment and the Williams Assignment were absolute nullities, rather than relative nullities, and that we should apply the discretionary doctrine of “law of the case” and correct our alleged prior “palpable” error.
The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971).
|1sThe law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at *1133 trial on remand and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81 (La.1973). However, even when applicable, the law of the case is discretionary and should not be applied where the error is palpable and the application would result in injustice. Id.; Arceneaux v. Amstar Corp., 10-2829 (La.7/1/11), 66 So.3d 438.
In Tolls v. Board of Sup’rs. of La. State Univ., 95-1529 (La.10/16/95), 660 So.2d 1206, an employment contract dispute, the parties had entered a written compromise of the dispute, but plaintiffs later filed an action seeking to recover the second installment of the settlement proceeds and other relief. The trial court orally granted a partial summary judgment awarding plaintiffs liquidated damages on December 10, 1993, but there was an unexplained delay in the signing of a judgment until May 2, 1994. Meanwhile, on January 20, 1994, the trial court overruled an exception of res judicata. The court of appeal granted supervisory writs and rendered a judgment on March 29, 1994, maintaining the exception and dismissing the action in its entirety with prejudice; the supreme court denied writs. During |19that time period, on May 2, 1994, the trial court signed the judgment awarding liquidated damages that had been rendered in December 1993. On appeal from that judgment, defendants argued that the trial court did not have the power and authority to render the May 2, 1994, judgment because the entire action had already been dismissed by the court of appeal in a final judgment in March 1994.
The court of appeal ruled that its March 29, 1994, judgment could be reconsidered because the case had previously reached the court on writs rather than on appeal. It noted that the “law of the case,” which usually forecloses relitigation, does not apply in cases of palpable error or in cases where application would result in manifest injustice. The appellate court found such palpable error existed and that manifest injustice would occur from application of the law of the case doctrine.
On review in Tolis, supra, the supreme court disagreed with the appellate court and stated that the appellate court “confused the doctrine of law of the case in cases involving interlocutory judgment with the doctrine of res judicata in cases involving final judgment.” It explained that, when a court renders a judgment that decides the merits of the case in whole or in part, the judgment is a final judgment. La. C.C.P. art. 1841. A final judgment may be rendered by either a trial or an appellate court, and a judgment by an appellate court that decides the merits of the case is a final judgment, regardless of whether the case reached the court on appeal or by writs. The supreme court stated that the final judgment is conclusive between the parties except on direct review and it acquires the authority of 120the thing adjudged if no further review is sought within the time fixed by law or if the judgment is confirmed on further review. Once a final judgment acquires the authority of the thing adjudged, no court has jurisdiction, in the sense of power and authority, to modify, revise or reverse the judgment, regardless of the magnitude of the error in the final judgment. For that reason, the supreme court dismissed the action which the appellate court attempted to revive. Id.
*1134 In the case at bar, the judgment finding that the assignments by Houston to Noble House, by Noble House to Trustee Williams and by Noble House to Mr. Olsen are absolute nullities, and which the appellants request be modified, revised or reversed, is a final judgment which no court has the power or authority to modify, revise or reverse. Therefore, the assignments of error relating to “law of the case” and any review or revision of the decision finding the assignments to be absolute nul-lities, rather than relative nullities, are without merit.

Motion for summary judgment

Appellate courts review motions for summary judgments de novo, asking the same questions the trial court asks to determine whether summary judgment is appropriate. Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773. This inquiry seeks to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La. C. C.P. art. 966(B). A material fact is one whose existence or nonexistence may be essential to the plaintiffs action under the applicable theory of recovery. Such facts potentially ensure or 121 preclude recovery, affect a litigant’s ultimate success or determine the outcome of the dispute. Henderson v. Union Pac. R.R., 41,596 (La.App.2d Cir.11/15/06), 942 So.2d 1259. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines v. Garrett, 04-806 (La.6/25/04), 876 So.2d 764. If issues regarding subjective facts are present, such as intent, knowledge, motive, malice or good faith, a summary judgment determination is usually not appropriate. Credibility determinations are also inappropriate in a summary judgment procedure. Hines, supra. The trier of fact, who has the opportunity to hear all the evidence and to observe the witnesses, should make such determinations. Henderson, supra; Denbury Onshore, L.L.C. v. Pucheu, 08-1210 (La.App. 3d Cir.3/11/09), 6 So.3d 386.
The effect of an absolutely null contract is found in La. C.C. art. 2033, which states as follows:
An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.
Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null. The performance may be recovered, however, when that party invokes the nullity to withdraw from the contract before its purpose is achieved and also in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice.
| ^Absolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null.
Comment (c) to La. C.C. art. 2033 states:
Under this Article, a party who knew or should have known at the time of contracting of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the illegal contract has been accomplished. See Boatner v. Yarborough, 12 La.Ann. 249 (1857); Gravier’s Curator v. Carraby’s Executor, 17 La. 118 (1841); *1135 Mulhollan v. Voorhies, 3 Mart. (N.S.) 46 (1824). This conclusion flows naturally from the principle expressed in the traditional Roman maxim, nemo propriam turpitudinem allegare potest (no one may invoke his own turpitude), sometimes called the “clean hands” doctrine. If a performance has been rendered under such a contract by a party with knowledge of the cause of nullity, the other party may keep that performance, in accordance with the complementary Roman maxim, In pari causa turpitudi-nem potior est conditio possidentis (in case of equal wrongdoing the one in possession is in a better position). See 2 Litvinoff, Obligations 163-169 (1975). The philosophy underlying those principles is not to reward the recipient of the performance, who by hypothesis is as guilty as the Tenderer, but to protect the court from mediating disputes between dealers in iniquityL]
Based on this code article, a person who knew or should have known at the time of contracting of a defect that made the contract absolutely null, may not avail himself of the nullity when the purpose of the illegal contract has been accomplished. The trial court found there was no evidence that Houston knew or understood that the defect would render the Noble House Assignment null and no evidence that he was in bad faith.
This matter was submitted to the trial court on briefs filed with a motion for summary judgment. The matter was not ripe for determination by summary judgment because Houston’s intent, knowledge and good faith were at issue. The knowledge Houston had regarding whether he knew the ^property he was transferring was Trust property, or whether the law imputes that knowledge to him by virtue of the fact that he was the settlor of the Trust property, are genuine issues of material fact, the evidence of which should have been considered and addressed in the lower court. The burden of proof has not yet been met.
The summary judgment at issue in this appeal granted the Succession the right to recover pre-concursus royalties paid to Noble House, Mr. Olsen and Trastee Williams, with legal interest from the date each royalty payment was made, and found Mr. Olsen and Trustee Williams liable in solido. Because genuine issues of material fact remain, we find that summary judgment was not appropriate in this case in regard to these pre-concursus royalties. Therefore, this assignment of error has merit.
We, therefore, reverse, in its entirety, the judgment of the trial court granting summary judgment in favor of the Succession. The Succession was not entitled to judgment as a matter of law. We preter-mit discussion of the issues of the amount of interest due on each royalty payment and whether Mr. Olsen and Trustee Williams are solidarily liable. Accordingly, this matter is remanded for further proceedings on these issues.

CONCLUSION

The judgment of the trial court granting the motion for summary judgment in favor of the Succession of Fred Langford Houston, and against George A. Olsen, Jr. and Hanh T. Williams, in solido, is reversed, and the matter is remanded for further proceedings. Costs of this appeal are | ^assessed to The. Succession of Fred Langford Houston, Armand L. Roos, Executor.
REVERSED AND REMANDED.

. The case has previously been before this court, and the underlying facts are found in J-W Operating Co. v. Olsen, 48,756 (La.App.2d Cir.1/15/14), 130 So.3d 1017, writ denied, 137 So.3d 1217 (La.4/11/14). The procedural posture of the case necessitates an explanation of some facts not found in the earlier opinion.

. The breach of trust action against Trustee Williams is pending in Caddo Parish and is referred to in the record currently before this court.

. According to a brief in the record in support of the motion, J-W records show that Trustee Williams personally received $40,817.64 and Mr. Olsen received $81,557.78 in royalty payments pursuant to the mineral lease. These monies were being sought pursuant to “Count I” of the cross-claim filed by the Succession.