DREW, J.
| tin these consolidated lawsuits, James Rountree appeals a judgment that awarded attorney fees, denied his motion for new trial, and dismissed his lawsuit when he refused to amend his petition after the trial court had earlier sustained an exception of nonjoinder.
We reverse the judgment insofar as it dismissed his claim against the Claiborne Parish Clerk of Court for allegedly mistakenly cancelling a mortgage securing a debt owed to Rountree. In all other respects, the judgment is affirmed.
FACTS
James Rountree extended credit to Fred Bayles (“Fred”) and Joanne Caldwell-Bayles (“Joanne”) that was secured by property located in Claiborne Parish and owned by Forsythe Holdings, Inc.[1] Joanne is Forsythe’s president. The mortgage was executed by the Bayleses on November 7, 2006, and recorded in Claiborne Parish on November 15, 2006, with the property described as: “The NW 1/4 of the SE 1/4 of Section 31, Township 19, Range 7 West, Claiborne Parish, Louisiana.”
The mortgage was amended on February 13, 2008, to exclude a tract located in Ouachita Parish. The amendment was *55 signed by Rountree, Fred, and Joanne, individually and as agent for Forsythe. The amendment was filed -in Claiborne Parish on March 7, 2008.
The mortgage arose out of an earlier case in which Rountree had represented Fred, who owned ScenicLand Construction Corporation. 12ScenicLand had sued St. Francis Medical Center in Ruston' alleging that the medical center defaulted on a contract to renovate patient rooms. ScenicLand Const. Co., LLC v. St. Francis Med. Ctr., Inc., 41,147 (La.App.2d Cir.7/26/06), 936 So.2d 247. The court awarded damages, of $218,000.00 to Scenic-Land. Rountree purchased the judgment for $200,000.00,' less $50,000,00 that he was owed for legal services rendered.
G & Y Limited Partnership (“G & Y”) and John and Susan Merritt became interested in purchasing the property in Claiborne Parish that was purportedly subject to the mortgage. They retained attorney Daniel Newell, whose title examination done in the course of this sale detected the existence of the 2006 mortgage, though it was in the name of the Bayleses, who,had not owned the property for close to two decades. Newell then advised G & Y and the Merritts that the mortgage needed to be canceled.
On May 7, 2009, the Bayleses presented an affidavit of lost promissory note to the clerk of court and had the above mortgage canceled. The property was sold to G & Y and the' Merritts approximately, a week later by a cash deed for $50,000.00. The deed was signed by Joanne, as president of Forsythe Holdings.
On November 17, 2011, Rountree filed a petition against Forsythe Holdings in which he prayed for a money judgment of $200,000.00, interest, attorney fees of 25% of the principal, and court costs. The petition did not seek recognition, validation, or enforcement of the-mortgage granted by the Bayleses to Rountree in 2006 and amended in 2008. Forsythe Holdings did not respond to the petition. A preliminary default judgment was entered on [¡¡September 6, . 2012. On September IS, Rountree filed a motion to confirm the default -judgment. Among the documents attached to Rountree’s motion were the collateral mortgage note and the hand note. Rountree’s motion referred to the mortgage, but not to the 2008 amended mortgage.
The default judgment was granted, allowing relief not prayed for in the petition, namely that of recognizing and maintaining the mortgage from the Bayleses. A notice of judgment was sent by the Claiborne Parish Clerk of Court to Forsythe through Joanne, its agent for service of process.
On November 15, 2012, Rountree filed a motion for sale without appraisal of the affected tract of land, specifically requesting that the property be sold under a writ of fieri facias. On January 4, 2013, a notice of seizure pursuant to a writ of fieri facias was entered and signed by a deputy sheriff.
G & Y and the Merritts became aware of the judgment and pending sheriff’s sale[2] and retained, Newell to protect their interests. On April 17, 2013, Newell emailed Rountree, asking him to voluntarily cancel the sheriff’s sale, or otherwise Newell would be forced to seek an injunction. Rountree’s response was to let the courts decide the issue. .Newell then sent a certified letter, which Rountree-received *56 on April 19, 2013, outlining the deficiencies in Rountree’s case and again attempting to persuade Rountree to voluntarily cancel the sale of the property. .
. On May 10, 2013, G & Y and the Mer-ritts filed a petition for intervention claiming that the sheriffs sale of the property at issue should |4be enjoined because they are the record -owners of the property. The trial court issued a temporary restraining order to halt the sheriffs sale scheduled for May 15, 2013.
On May 30, 2013, the trial court heard the interveners’ rule to show causé why a preliminary injunction should not be issued. The trial court concluded that the default judgment was legally defective because the original petition failed to name the Bayleses and the interveners, and because the default judgment included , relief not prayed for in the petition, namely that of recognizing and maintaining the Bayles-es’ mortgage.
The court concluded that since the default judgment was defective, the sheriffs sale could not be allowed to proceed. Accordingly, the court enjoined the sale. Rountree appealed.
This court affirmed the judgment, finding that the trial court did not abuse its discretion in granting injunctive relief because the default judgment was absolutely null. Rountree v. Forsythe Holdings, Inc., 48,983 (La.App.2d Cir.6/25/14), 144 So.3d 1126. This court stated:
[N]ot only was the default judgment defective as a matter of law for granting relief not prayed for in the petition, but it was also absolutely null because the interveners were not put on notice of the adverse claim to their property. Moreover, the mortgage had been granted by Fred Bayles and Joanne Caldwell-Bayles, not. Forsythe Holdings. The 2008 amendment to the mortgage did not state in the act.why Forsythe appeared in the amendment. . Because Forsythe Holdings’ appearance is not explained on the face of the instrument, it was not sufficient to'.put interveners on notice. In addition, the original petition also failed to name the Bayleses as defendants even though Rountree was asserting rights, against their mortgage.
Id., 48,983 at pp 6-7, 144 So.3d at 1130.
|aOn September 2, 2014, Rountree filed another suit against Forsythe, G & Y, the Merritts, and James Gladney,' in his capacity as Clerk of Court for Claiborne Parish.[3] Rountree alleged that the Bayleses’ discharges in bankruptcy precluded any action against the Bayleses. He further alleged that Forsythe had ratified and confirmed the mortgage in February of 2008. Rountree prayed for' a judgment against Forsythe for the balance remaining due on the hand note, plus interest and enforcement of the mortgage as amended, -or alternatively, a judgment against Gladney for the damages caused by cancellation of the mortgage.[4]
Gladney raised the exceptions of prescription and nonjoinder of the Bayleses. In his opposition to the exceptions, Roun-tree pointed out that Fred received a bankruptcy discharge on June 3, 2009, and Joanne received a bankruptcy discharge on April 5, 2012.
On December 4, 2014, the tel court granted Gladney’s exception of nonjoinder. Rountree was given until January 9, 2015, *57 to amend his petition to add the Bayleses as defendants. Otherwise, the trial court would dismiss all claims and causes of action on behalf of Rountree. The judgment was signed on February 20, 2015.
Rountree would not amend his petition to add the Bayleses as defendants because he believed that to do so wouid violate federal bankruptcy law due to the discharges in bankruptcy.
IfiOn February 20, 2015, Gladney filed a motion to dismiss because of Rountree’s failure to amend his petition by January 9, 2015. G & Y and the Merritts joined the motion to dismiss. On February 27, 2015, Rountree filed a motion for new trial.
The trial court denied the motion for new trial. The court granted the motion to dismiss. The court also awarded attorney fees of $11,394.78 to G & Y and the Merritts relating to the injunctive relief that they had obtained in the earlier lawsuit.
DISCUSSION

Exception of nonjoinder

La. C.C.P. art. 641 provides that:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and'is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
The 1995 amendments to Louisiana’s joinder articles eliminated the categories of “indispensable parties” and “necessary parties” in favor of a single category of “parties needed for just adjudication.” Industrial Companies, Inc. v. Durbin, 2002-0665 (La.1/28/03), 837 So.2d 1207.
As the supreme court stated in State, Dept. of Children & Family Servs. ex rel. A.L. v. Lowrie, 2014-1025, p. 18 (La.5/5/15), 167 So.3d 573, 586 n. 19:
_[£The failure to join a party to an action may be pleaded, in the peremptory exception, ,or: may be noticed by the trial or appellate court on its own motion. LSA-C.C.P. art. 645. If a person de- . scribed in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the - court include: (l) 'to what extent a judgment rendered in the person’s absence might be._prejudicial to him or those already present; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping- of relief, or by other measures; (3) whether a judgment rendered in the person’s absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. LSA-C.C.P. art, 642. Very few parties are absolutely indispensable to the litigation before the court. See Frank L. Maraist, 1 La. Civ: L, Treatise, Civil Procedure § 4:10 (2d ed.). ■
The Bayleses are not parties needed, for just adjudication concerning the alternative demand against, Gladney. Although Gladney canceled the mortgage based upon an allegedly fraudulent affidavit submitted by the Bayleses, it is Roun-tree’s, .contention that Gladney did not comply with statutory safeguards imposed to thwart such trickery.
*58 We recognize that in their affidavit, the Bayleses warranted that there was no other holder of the note. La. R.S. 9:5168(F)[5] provides that the Bayleses would be “liable to and shall indemnify the clerk of court or ... any person relying upon the cancellation for any damages that they may suffer as a consequence of such reliance.” It would then be up to Gladney to assert a third-party demand against the Bayleses pursuant to that provision.
| ^However, the Bayleses remain as parties needed for just adjudication regarding the claims against Forsythe, G & Y, and the Merritts. This is because Rountree is not only seeking collection of the amounts owed under a hand note executed by the Bayleses, but he is also seeking execution and recognition of a mortgage affecting property once owned by Forsythe and now owned by G & Y and the Merritts.
Gladney contends that the law of the case controls the disposition of this issue. This is in reference to a recognition by this court in the earlier opinion that the petition in the first suit failed to name the Bayleses as defendants even though Roun-tree was asserting rights against their mortgage. This court recently discussed the policy of law of the case in J-W Operating Co. v. Olsen, 49,925, pp. 17-18 (La.App.2d Cir.6/24/15), 167 So.3d 1123, 1132-33:
The law of the ease refers to a policy by which the court will not reconsider prior rulings in the same case. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81 (La.1973). However, even when applicable, the law of the case is discretionary and should not be applied where the error is palpable and the application would result in injustice. Id.; Arceneaux v. Amstar Corp., 10-2329 (La.7/1/11), 66 So.3d 438.
|flThis court’s conclusion that the Bayles-es are not parties needed for just adjudication of the alternative demand against Gladney is consistent with the statement in the earlier opinion, which involved the enjoining of the seizure and sale of property, not whether a clerk of court was liable to a creditor for damages caused by the clerk’s allegedly erroneous cancellation of a mortgage.

Effect of bankruptcy discharges

Rountree contends that because of the discharges in bankruptcy, 11 U.S.C. § 524 prohibits an action against the Bayleses concerning the debt. That section provides, in part:
(a) A discharge in a case under this title—
*59 [[Image here]]
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions ‘of sections 523(c) and 523(d) of this title, in a case concerning the debtor’s spouse commenced on the date of the filing of the petition in the casé concerning the debtor, whether or not discharge of the debt based on such community claim is waived.
Prior to amendment in 2008, discharge in bankruptcy was listed as an affirmative defense in La. C.C.P. art. 1005. Now it is listed as a peremptory exception in La. C.C.P. art. 927. We conclude that the Bayleses’ discharges in bankruptcy did not serve as obstacles to the Bayleses being named as | mdefendants in the claim against Forsythe, G & Y, and the Merritts. If the Bayleses are aggrieved by being named as defendants, they may- seek relief under Louisiana law by filing the peremptory exception based on the bankruptcy discharges.

Attorney fees

La. G.C.P. art. 2298 allows for an award of attorney fees for the injunctive relief obtained by G & Y and the Merritts:
Injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of fieri facias shall be granted to the judgment debtor or to a third person claiming ownership of the seized property:
[[Image here]]
(4)When the judgment sought to be executed is absolutely null. In the event injunctive relief is granted to the judgment debtor or third party claiming ownership of the seized property, if the court finds the seizure to be. wrongful, it may allow damages. Attorney’s fees for the services rendered in connection with the injunction may be included as an element of the damages.
Newell threatened to seek injunctive relief unless Rountree canceled the sheriffs sale of his client’s property. Undeterred, Rountree decided to press on with what ultimately was determined to be an absolutely null default judgment. Accordingly, we conclude that the trial court did not abuse its discretion in casting Rountree to pay attorney fees of $11,394.78.
CONCLUSION
With each party to bear its own costs, we reverse that portion of the judgment dismissing the alternative demand against Gladney on the ground of nonjoinder, and affirm the remainder of the judgment.
REVERSED IN. PART AND AFFIRMED IN PART.

. Rountree did not perform a title search before accepting the mortgage note, in order to verify the Bayleses’ ownership. The mortgage also covered property in Ouachita Parish. '

. Rountree wrote to G & Y and the Merritts on April 11, 2013, alerting them of the judgment and the sheriff’s sale.

, The trial court consolidated the two suits on January 5, 2015.

. Rountree stated that he did not have a claim against G & Y and the Merritts, but named them as defendants only because they have an interest in the property that he contends is subject to the mortgage.

. (F). An affiant who has signed an affidavit that is provided to the clerk of court or the recorder of mortgages pursuant to this Section and that contains incorrect statements causing the recorder to incorrectly cancel the inscription of a mortgage or privilege from his certificate is liable to and shall indemnify the clerk of court or the recorder of mortgages, the sheriff, and any person relying upon the cancellation for any damages that they may suffer as a consequence of such reliance.