# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 18-369


**BRADLEY SCOTT BRIDGES AND STEPHANI BRIDGES**

**VERSUS**

**BARRY WAYNE BRIDGES**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-2784
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Billy Howard Ezell, and Candyce G. Perret, Judges.


**AFFIRMED AND REMANDED.**

**Timothy O'Dowd**
**Jared W. Shumaker**
**O'Dowd Law Firm, LLC**
**924 Hodges Street**
**Lake Charles, LA 70601**
**(337) 310-2304**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Barry Wayne Bridges**

**Van C. Seneca**
**405 W. College Street**
**Lake Charles, LA 70605**
**(337) 439-1233**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Bradley Scott Bridges**

**EZELL, Judge.**

Scott Bridges appeals a trial court's grant of summary judgment in favor of his brother, Barry Bridges, dismissing Scott's claim to set aside an act of donation. Scott claims that a donation of land to his father and mother in 2005 was an absolute nullity because he did not sign it in in the presence of a notary and two witnesses. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On November 17, 2003, Scott bought approximately twenty acres of land. After he bought the property, Scott got married. He and his wife, Stephani, built a house on the property. Subsequently, on June 15, 2005, Scott donated half of the property to his parents, Jessie and Clifton Bridges. His parents then built a house on their half of the property.

In October 2014, Jessie died. Just a month later, Clifton died. After his parents' deaths, Scott learned that they had left wills in 2007, naming each other as the universal legatee in the event of their respective deaths, and, in the alternative, naming Scott's brother, Barry, as universal legatee. Scott was excluded. Thus, Barry inherited his parents' entire estates, including the donated property. A judgment of possession recognized that Clifton became owner of Jessie's share of the donated property. A second judgment of possession recognized that Barry became owner of the property upon his father's death.

On July 13, 2015, Scott filed a petition to set aside the donation, naming his brother as a defendant. Scott and his wife, Stephani, also sought damages for the alleged tortious acts inflicted on them, and their minor son, by his father.

Scott seeks to set aside the act of donation, alleging that he did not sign the act of donation before a notary and two witnesses at the same time his parents

signed. Both Scott and Barry filed cross motions for summary judgment, which were denied in July 2017. Barry filed another motion for summary judgment on January 22, 2018, seeking dismissal of Scott's request to set aside the donation. This time Barry alleged that Scott could not seek nullity of the 2005 donation because he did not have "clean hands." Barry argued that Scott donated the property to his parents for "tax avoidance" purposes.

A hearing on the motion for summary judgment was held on February 22, 2018. Determining that Scott's testimony established that the donation was to avoid paying taxes, the trial court held that Scott was prevented from attacking the donation of property due to his "unclean hands." The trial court granted Barry's motion for partial summary judgment. A judgment was signed on March 5, 2018, dismissing Scott's claim to set aside the act of donation with prejudice. The trial court also declared that the judgment was a final judgment pursuant to La.Code Civ.P. art. 1915. Scott appealed the judgment to this court.

## SUMMARY JUDGMENT

Scott wants this court to reverse the summary judgment granted by the trial court. He claims that the trial court improperly applied the unclean hands doctrine to his claim for nullity of the donation of the immovable property that was not executed before a notary and two witnesses. He argues that the basis for the nullity of a donation has nothing to do with an illicit or immoral object or cause of the contract. Scott further argues that, even if the unclean hands doctrine is applicable, there are questions of material fact concerning the reasons for executing the act of donation.

"Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment

2

is appropriate." *Greemon v. City of Bossier City*, 10-2828, 11-39, p. 6 (La. 7/1/11), 65 So.3d 1263, 1267. A summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4).

"The burden of proof rests with the mover." La.Code Civ.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the matter at issue, however, his burden on the motion for summary judgment "does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* Specifically, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties." La.Code Civ. P. art. 966(E).

Pursuant to La.Civ.Code art. 2029, "[a] contract is null when the requirements for its formation have not been met." However, "a performance rendered under a contract that is absolutely null because its object or its cause is

3

illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null." La.Civ.Code art. 2033.

In *Guilbeau v. Domingues*, 14-328, p. 7 (La.App. 3 Cir. 10/1/14), 149 So.3d 825, 829, *writ denied*, 14-2283 (La. 1/16/15), 157 So.3d 1132, this court noted that "the clean hands doctrine . . . prevents a litigant from maintaining an action if he must rely, even partially, on his own illicit or immoral act to establish a cause of action."

In *J-W Operating Co. v. Olsen*, 49,925, p. 22 (La.App. 2 Cir. 6/24/15), 167 So.3d 1123, 1135, the second circuit recognized that pursuant to La.Civ.Code art. 2033, a person who knows "at the time of contracting of the defect that made the contract absolutely null, may not avail himself of the nullity when the purpose of the illegal contract has been accomplished."

In *Dugas v. Dugas*, 01-669 (La.App. 3 Cir. 12/26/01), 804 So.2d 878, *writ denied*, 02-652 (La. 5/24/02), 816 So.2d 307, a father transferred various immovable and movable properties to his daughter to place the properties beyond the reach of potential judgment creditors. Once the threat from the creditors had passed, the father asked the daughter to return the properties. She refused, and he filed suit. On appeal, this court recognized that "Louisiana public policy does not permit a potential debtor to transfer property to someone else in order to secrete it from potential creditors, in essence, for an illicit purpose." *Id*. at 881. Given that the father admitted he transferred the properties to safeguard them from creditors, this court found that the transfer was for an illicit and immoral purpose. The court found the daughter was entitled to summary judgment because the father forfeited the right to have the properties returned to him pursuant to La.Civ.Code art. 2033.

In this case, Scott argues he is not seeking to annul the act of donation based on the fact that it was entered into for an illicit or immoral purpose. La.Civ.Code art. 2030. He argues that he is seeking to rescind the contract as absolutely null because he did not sign before a notary and two witnesses. He argues that the unclean hands doctrine does not apply under these circumstances.

"The clean hands doctrine, also referred to as the unclean hands doctrine, is recognized as a defense in Louisiana." *Lakewood Prop. Owners' Ass'n v. Smith*, 14-1376, 15-178, p. 19 (La.App. 4 Cir. 12/23/15), 183 So.3d 780, 792, *writ denied*, 16-138 (La. 2/26/16), 187 So.3d 469. If a person relies, in whole or in part, on any illegal or immoral act or a transaction to which he is a part, he cannot maintain an action to establish his cause of action. *Id.* He "himself [must] be free from any unlawful or inequitable conduct with respect to the matter or transaction in question." *Pannagl v. Kelly*, 13-823, p. 11 (La.App. 5 Cir. 5/14/14), 142 So.3d 70, 76.

The very act of donation that Scott seeks to annul was admittedly entered into for the illicit purpose of avoiding taxes. In his deposition, Scott stated, "Well, all of the property was - - the 20 acres is in my name. The so-called donation was really only for some tax purposes. It was always known, and [my father] made it known several times, that all of the property would end up being mine." In his affidavit, Scott admits that with the donation to his parents, there were now two homestead exemptions on the property. He further stated, "Notwithstanding the purported donation, I always considered the 10.354 acres to be mine." However, because of the donation, the property was subject to two homestead exemptions and Scott's parents paid the real estate taxes on the donated property for over ten years.

As observed in Comment (c) to La.Civ.Code art. 2033, "The philosophy underlying those principles is not to reward the recipient of the performance, who by hypothesis is as guilty as the renderer, but to protect the court from mediating disputes between dealers in iniquity." Scott was knowledgeable that the donation was for tax avoidance purposes when he signed the document. While he claims it was all his parents' idea, he knowingly went along with the act of donation and did not complain for ten years. He cannot get the benefit of the illicit contract for ten years and then seek its annulment on other grounds. Scott has admitted it was for tax avoidance purposes. This fact is not disputed.

After a de novo review, we find that the trial court properly granted partial summary judgment in favor of Barry dismissing Scott's claim to set aside the donation of the land to his parents. The judgment of the trial court is affirmed. Costs of this appeal are assessed to Bradley Scott Bridges. This case is remanded for further proceedings.

**AFFIRMED AND REMANDED.**